BARKER v. SHOOTS.

*Circuit Court, N. D. New York.* January 4, 1882.

PATENTS FOR INVENTIONS—REISSUE No. 6,531.
   Reissued patent No. 6,531, granted to William C. Barker on the sixth day of July, 1875, for "an improvement in buckets for chain-pumps," *held* valid, and infringed by buckets for chain-pumps constructed as described in letters patent No. 158,534, granted January 5, 1875.

In Equity.

*George E. Buckley*, for plaintiff.

*Walter L. Dailey*, for defendant.

BLATCHFORD, J.   This suit is brought on reissued letters patent No. 6,531, granted to the plaintiff, July 6, 1875, for an "improvement in buckets for chain-pumps," the original letters patent having been issued to the plaintiff, June 20, 1871, and having been reissued to him, May 19, 1874.   It is the same patent which was passed upon by this court in *Barker* v. *Stowe*, 15 Blatchf. C. C. 49.   The specification is set forth in the report of that case.   The defendant in that case, Deloraine F. Stowe, had made and sold buckets for chain-pumps, described in letters patent granted to him February 23, 1875, for an "improvement in buckets for chain-pumps."   It was held that he had infringed claims 1 and 2 of No. 6,531; but the bill was dismissed on the ground that both of those claims were anticipated by pump-buckets constructed by one Orin O. Witherell prior to the plaintiff's invention.

In respect to claim 1, Witherell, on his examination as a witness in that suit, introduced an exhibit, A, as representing a form of bucket which he made and sold for five months in the year 1866. It was said of that exhibit, in the decision in that suit:

"It has a thin India-rubber disk placed loosely above a metal disk, and the edge of the rubber disk forms a flange, which extends downwards and embraces part of the depth of the metal disk.   The rubber disk has a hole in the center, through which a metal eye, fastened to the upper part of the metal disk, passes.   He testifies that the settling down of the chain, when the pumping was stopped, allowed the water above to escape through the hole in the center of the rubber disk.   *   *   *   Witherell testifies that he put the buckets, like Exhibit A, particularly into worn pump tubes, which had only the metal plate buckets; that between April and August, 1866, he put buckets like Exhibit A into between 50 and 100 wells, mostly in the south-eastern part of New Hampshire; that he saw one of such pumps in successful operation with them as late as 1869; that he never used less than three of such buckets for a well, and seldom more of them; that he never knew any of them to freeze; that the back motion of the chain, after pumping was stopped, was sufficient, even when a ratchet was used, to open a central space between the rubber and the metal plate, the rubber adhering to the sides of the pump tube, and allowing the water to escape down through the center; that he used the buckets like Exhibit A for the purpose of fitting closely in the tube, so as to cause suction; and that he generally succeeded in establishing a suction, unless the tube was too much worn or defective. There is no testimony in contradiction of this, or throwing doubt upon the truth of the facts testified to by Witherell, or showing that buckets like Exhibit A would not operate as he testifies.   Exhibit A shows an elastic bucket for a chain-pump, adapted to fit and work in the bore of a pump-tube, to raise water by suction, and provided with a suitable orifice or outlet, through which the water remaining in the pump-tube above the bucket can escape down to the source of supply.   *   *   *   It appears to have been a successful, practical working apparatus.   If it was an elastic suction-bucket with a drip, it is of no consequence whether Witherell devised it primarily, with a view to the drip, or not; nor is it of any consequence that the hole for the link served also as a drip-hole.   If it allowed the water to escape, it would do so as effectually as the extra passage in the plaintiff's bucket.   It may be, perhaps, that

the plaintiff is entitled to some claim in respect to a drip orifice in an elastic suction-bucket; but, in view of the Witherell Exhibit A, the first claim of the plaintiff's patent is too broad, and is invalid."

In respect to claim 2, Witherell introduced in that case another form of bucket made by him, Exhibit B. It was said of that Exhibit, in the decision in that suit:

"He testifies that he made and sold buckets like Exhibit B, after he made them like Exhibit A, and from the fall of 1866 until the fall of 1873. Exhibit B has a rubber disk compressed between two metal plates by a screw and a nut. By lubricating with oil the iron washer on the lower face of the disk, the lower part of the disk was caused to expand more than the upper part, so as to give to the lower part a bearing edge, with the part above it receding from it inwards. Exhibit B shows such construction. He says that he never used less than three of Exhibit B for a set, and seldom more; that his practice was to have the bucket fit as closely as possibly, and not have the pump work too hard; that the object of the beveled edge was to have the rubber slide easily over any roughness in the tube; that the bucket operated both by lifting and suction; that, when the bucket fitted closely, it resisted the downward run of the chain; that he set them close enough, by expansion, to draw the water up readily, and yet leave room for the water to pass back on the inside of the tube; that the water in the tube, with Exhibit B, never froze, when the bucket was properly adjusted; that he made a considerable number with the bearing edge like Exhibit B; and that he used that form in tubes that were too large to be filled by expanding the disk equally from both of its faces. This Exhibit B is a solid elastic bucket, having an elastic-bearing edge, and its upper portion convex from said edge, whereby the bucket will readily yield to any irregularities in the pump-tube, and admit of its being easily drawn up, while, at the same time, it will resist moving downward. It answers exactly the second claim of the plaintiff's patent. A provision for the escape of the water is no part of the second claim, and the elastic-bearing edge is no part of the first claim. Although Exhibit A has no elastic-bearing edge, it anticipates the first claim; and although Exhibit B has no water escape, it anticipates the second claim."

The answer in the present case denies infringement, and sets up that the buckets for chain-pumps which the defendant has made, used, and sold are secured to him by letters patent granted to him, No. 158,534, dated January 5, 1875. It also sets up want of novelty and alleges various anticipations. One of them is that of Witherell. It also alleges that the reissue sued on contains matters of substance not embraced in the original patent.

In the *Stowe Case* it was alleged that matter was found in the reissue which was not in the original patent of 1871, but the court said: "The drawings are identical, and there is nothing either in the specification or the claims of the reissue which is not justified by what is found in the description or drawings of the original patent." Nothing is shown to change this view, and the original patent is not put in evidence in this suit.

The structure presented by the plaintiff as the infringement is known as "Lovell Exhibit 1." The same structure is represented by "Defendant's Exhibit 1." It has no drip-notch. It is constructed in accordance with the description in No. 158,534. It consists of a

ringed bolt or eye-bolt, which passes through an upper metal plate, the extension beyond such plate having a male screw-thread cut on it, and passing through an India-rubber disk and into a female screw thread cut in another and lower metal plate, to which a loop or eye or ring is affixed. The two parts are centered when screwed togethe Each of the two plates is convex on its inner face, towards the rubbe disk, and the disk is slightly concave on each of its opposite upp and lower faces. The disk can be expanded circumferentially in a outward direction, by screwing up the lower plate. The disk is solid The lower part of its circumference, for a distance of perhaps a eighth of an inch upwards from the lower edge, is beveled outward very slightly, and then its outer face slopes upward and inward a an angle of some 508 to 608, with its base to its upper concave face such slope being, in superficial upward length, about half an inch. The claim of No. 158,534 is to a combination of all the parts making up the structure.

Claims 1 and 2 of No. 6,531, are those which are alleged to have been infringed. They are as follows:

"1. An elastic bucket for chain-pumps, adapted to fit and work in the bore of a pump-tube, to raise the water by suction, provided with a suitable orifice or outlet through which the water remaining in the pump-tube above the bucket is allowed to escape down to the source of supply, substantially as and for the purpose set forth. 2. A solid elastic bucket, having an elastic-bearing edge, and its upper portion convex or contracted from said edge, whereby the bucket will readily yield to any irregularities in the pump-tube, and admit of its being easily drawn up, while at the same time it will resist moving downwards, substantially as and for the purpose specified."

On the question of infringement the defendant testifies that his bucket raises water "by lifting and not by suction particularly;" that it works on the same principle as the old metallic bucket; that he always makes his buckets "to fit loosely in the tube;" that a $1\frac{1}{2}$-inch bucket of his can be expanded, by compressing the rubber between the plates, so as to fit a $1\frac{7}{8}$-inch tubing; and that, after pumping with his bucket, the water runs back down the tube to the source of supply through the space around the bucket, because that fits loosely in the tubing and is smaller than the bore. It is contended for the defendant that his bucket is not a solid elastic bucket, within the meaning of No. 6,531; that it does not assume the shape of a cone; and that it will operate equally well with either surface upward. The evidence is entirely satisfactory that the defendant's bucket infringes claim 2 of No. 6,531. It is a solid elastic bucket, and has an elastic-bearing edge, and has its upper portion convex or contracted from said edge, and thereby the bucket will readily yield to any irregularities in the pump-tube, and it can be easily drawn up while at the same time it will resist moving downward. The specification and claim of No. 158,534 show that the bucket is intended for use with the smaller surface of the rubber disk uppermost. The witness Riker shows that this is so. It also appears that the defendant's buckets sent

out by him to be put in were put in so as to fit tightly in the tube and draw water by suction, and were put in with the smaller end of the rubber disk uppermost, and had drip-notches cut in them when set. If they fit tight and draw water by suction, the drip-notch is a necessity, if there is danger of freezing. It must therefore be held that infringement of claim 1 also is shown.

The evidence of Witherell is not produced in this suit. In regard to Witherell's testimony in the former suit against Stowe, respecting structures anticipating claim 1 of No. 6,531, it was said, in the decision in that suit, that there was in that suit no testimony contradicting Witherell, or throwing doubt on the truth of the facts testified to by him, or showing that a bucket like Exhibit A in that suit would not operate as Witherell testified it would. In the present suit, five witnesses have been examined on the part of defendant, namely, Waite, Bostwick, Smith, Wardell, and Reed, to show want of novelty in claims 1 and 2. The answer does not set up prior knowledge or use by any of them. But it is doubtful whether the record contains any objection on that ground to the testimony of any of them. Their evidence will therefore be considered.

The most that the evidence shows is the use, not in new pump-tubes, but in worn pumb-tubes, of a flat, thin cylindrical disk of rubber, slipped over the loop of the chain and lying flat on the metal button, to compensate for the wear which had taken place in the tube by the rubbing of the metal button. The rubber disks were not used in a new cylindrical bore, but only in bores which had become of oval or irregular shape, and which were worn more irregularly for a distance at the top and the bottom of their length than at the middle thereof. These disks were not the elastic bucket of claim 1 of No. 6,531, fitting so as to operate by suction. The cylindrical rubber disk could not fit any bore that was not cylindrical, and could not operate by suction in a bore that was not cylindrical. It was as much of a lifting button as the metal button, and it could not operate by suction in the non-cylindrical bore any more than the non-fitting metal button could in a bore either cylindrical or non-cylindrical. Of course, if these rubber disks did not fit the bore they did not have the drip-notch of claim 1 of the plaintiff. The evidence in the present case as to the prior structures is very different from that in the former case against Stowe. It now appears clearly that, in a wooden pump-tube, originally cylindrical, but worn by the use of cylindrical metal buttons on a chain, a cylindrical rubber disk will not operate by suction, and the water will escape back around the edge of the disk, because the wear is not uniformly annular, and if the rubber disk be cut non-cylindrical, but oval, to suit an oval wear, it will, in going up and down, cross the oval and become jammed.

The thin flat disks referred to are not the solid elastic bucket, with an elastic-bearing edge, and its upper portion convex or contracted from said edge, required by claim 2 of No. 6,531. Defendant's Ex-

hibit No. 8 is the only approach towards such a structure, but it was used only experimentally.

The patent No. 19,173, granted to Marvin, January 19, 1858, on the invention of Horton, does not show what is found in claims 1 and 2 of No. 6,531, and in the defendant's bucket. It has only leather and not India-rubber or other similarly elastic material. This patent was not mentioned in the answer, and its introduction in evidence was objected to on that ground.

It is stated in the defendant's brief that the Witherell exhibits in the former case against Stowe are, by stipulation, made evidence in this case. I find no such stipulation. The only stipulation I find in the record, on the subject, is one that the certified copies of United States letters patent made exhibits and filed in the former case against Stowe be used for this case. Morever, plaintiff's Exhibit 13 was offered in evidence by the plaintiff as a rubber disk of Witherell, (and it appears to be like what is above described to be Exhibit A of Witherell in the former case against Stowe,) and its introduction was objected to by the defendant on the ground that at the stage of the case at which it was offered it was not rebutting evidence. The objection was valid. The defendant then went on to give notice that he would produce and read at the hearing the evidence of Witherell taken in the former suit against Stowe and the exhibits. To this the plaintiff entered an objection, on the ground that the matter was irrelevant, and could not, under any circumstances, form any part of the record in this suit. This objection was valid. Moreover, the said evidence of Witherell has not been produced by either party; and so Exhibit No. 13 has no place in this case as evidence of a prior structure.

It is proper to say that, on objections taken by the defendant and appearing on the record, and insisted on by him at the hearing, I have rejected the following parts of the testimony for the plaintiff: The question at page 12, folio 17, "Q. Has not," etc., and the answer; Exhibit 10 of plaintiff; Exhibit 11 of plaintiff; and the evidence as to the contents of a license from the plaintiff to the defendant and one Colwell.

There must be the usual decree for the plaintiff.